## BOAK v. ROBIE.

(Circuit Court of Appeals, Seventh Circuit. December 1, 1926.)

No. 3692.

1. Appeal and error ⬅︎1008(2)—Findings, supported by any evidence, should not be disturbed, where jury is waived.

Findings of court, where jury is waived, should not be disturbed, if there is any evidence to support them.

2. Corporations ⬅︎269(3)—Facts held to show stockholder in insolvent corporation never parted with title to stock and was liable to assessment thereon (Const. Minn. art. 10, § 3).

In action by receiver of insolvent corporation to enforce stockholder's double liability,

16 F.(2d)—3

under Const. Minn. art. 10, § 3, facts held to show that defendant never parted with title to stock, and was therefore liable to assessment.

3. Corporations ⬅︎273—Interest on assessment against stockholder in insolvent corporation should be allowed from date of action to collect, not from date of assessment, in absence of demand (Const. Minn. art. 10, § 3).

Where court on August 30, 1920, ordered 100 per cent. assessment against stockholders in insolvent corporation, under Const. Minn. art. 10, § 3, payable within 30 days, but no demand for payment was made before commencement on March 23, 1922, of action to collect assessment, interest on assessment should be allowed from latter date.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by E. G. Robie, as receiver of the Northern Fish Company, against Robert Boak. Judgment for plaintiff, and defendant brings error. Affirmed, on condition of remittitur.

John R. Montgomery, of Chicago, Ill., for plaintiff in error.

James J. Courtney, of Duluth, Minn., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This action was brought to enforce an alleged liability against plaintiff in error, herein called defendant, growing out of a 100 per cent. assessment on 90 shares of capital stock issued by the Northern Fish Company, a Minnesota corporation. Plaintiff's theory was that defendant subscribed for and became the owner of 90 shares of this stock; that under the laws of Minnesota (article 10, § 3, Minnesota Constitution) such stockholder became liable to an assessment of the amount of such stock ($9,000) upon the company's becoming insolvent.

Defendant contends that he never subscribed for any stock, and was never the owner of any stock, in the Northern Fish Company. He further takes the position that the indebtedness of such company at the time it is alleged he acquired the stock was never shown, and that his liability terminated long before the liquidation proceedings were instituted in the Minnesota state court, because of an alleged retransfer of the stock to the president of the company; that the principal creditor of the Northern Fish Company was its president, whose conduct now precludes him from enforcing his claim against defendant.

The parties in writing waived a jury trial, and the court found against the defendant. Judgment was rendered in favor of plaintiff for $9,000 and interest from September 30, 1920, the date when the assessment became due and payable.

It appears from the testimony that the Northern Fish Company, a Minnesota corporation, was organized to deal in the fresh fish business; that defendant was actively connected with R. B. Boak & Co., a corporation engaged in the salt fish business. Defendant's father was the president and principal stockholder in the latter company.

Negotiations were had between defendant and one McDougall, president of the Northern Fish Company, whereby either the defendant or R. B. Boak & Co. advanced money to and received stock from the Northern Fish Company. This stock was issued to one Thompson, McDougall's secretary, who in turn immediately assigned the certificates in blank and mailed them to defendant, who deposited them with the treasurer of R. B. Boak & Co. Thompson never paid anything for the stock, and her name was used to satisfy Boaks' desire to avoid any record disclosure of their interest in the fresh fish business. The checks for the stock were issued by R. B. Boak & Co., and were paid from its funds.

Counsel for defendant has made a persuasive argument in support of his urge that the stock was transferred to and belonged to R. B. Boak & Co. rather than to defendant. But after reading all of the evidence, including numerous letters, we are convinced that the court's finding that "defendant became the legal and actual owner of said 90 shares of stock" is supported by competent evidence.

[1] It would unnecessarily prolong this opinion to refer in detail to such evidence. Keeping in mind the rule applicable where the jury is waived—viz. that the findings should not be disturbed, if there be any evidence to support them (Law v. United States, 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401; Fleischmann Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624)—we need only observe that this issue was a controverted one.

[2] Defendant further contends that, prior to the commencement of the receivership proceedings, the certificates of stock were surrendered to the company or turned over to McDougall, and defendant's liability as a stockholder terminated. The testimony upon this issue is more certain, and less free from doubt. Some time in 1919, when it was learned that the Northern Fish Company was financially embarrassed, defendant and McDougall met to talk over its future. McDougall was optimistic and expressed confidence in his ability to make the company a success. Defendant was pessimistic, and wanted the company liquidated. Nothing definite was determined upon, except that McDougall asked defendant to send him his stock and said he would endeavor to sell it to local parties in Duluth. The stock was forwarded to McDougall, but he was evidently unable to sell it.

Whatever may have been the hopes or expectations of defendant and McDougall, it is apparent from this statement of facts that Boak never parted with his title to the stock. Doubtless defendant, as the owner of this stock, could have avoided future loss through a liquidation of the company. But he did not so proceed. He hoped, no doubt, that McDougall might sell his stock for him, or that the affairs of the company would improve. McDougall, likewise, hoped for an improvement in the company's business, and he manifested this confidence by numerous substantial loans to the company. He never agreed to sell defendant's stock, but merely offered to render such friendly assistance as was within his power to negotiate a sale. We conclude that defendant never parted with the title to the stock, and that McDougall did nothing to prevent the levying of the assessment here sued upon.

[3] Respecting the item of interest, it appears that the court ordered a 100 per cent. assessment on the 30th day of August, 1920. By the terms of this order the assessment was payable in 30 days. Upon the oral argument it was admitted that there was no proof of a demand for the payment of this assessment prior to the commencement of this action, to wit, March 23, 1922. Upon this showing interest should have been allowed from this latter date rather than from August 30, 1920. This difference is $844.50.

The plaintiff is hereby given the privilege of remitting the sum of $844.50 from its judgment within the 30 days of the date hereof, in which case the judgment will be affirmed. In case such remittitur is not made within 30 days, the judgment will be reversed, with directions to grant a new trial. Plaintiff in error shall recover his costs in this court.